No. 21-5254

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

DONALD J. TRUMP, in his capacity as
the 45th President of the United States,

*Plaintiff-Appellant*,

v.

BENNIE G. THOMPSON, in his official capacity as Chairman of the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol; THE UNITED STATES HOUSE SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL; DAVID S. FERRIERO, in his official capacity as Archivist of the United States; and THE NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,

*Defendant-Appellees.*

## PLAINTIFF-APPELLANT'S EMERGENCY MOTION FOR ADMINISTRATIVE INJUNCTION AND FOR EXPEDITED BRIEFING SCHEDULE

Jesse R. Binnall
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com

**COUNSEL FOR PRESIDENT DONALD J. TRUMP**

The Plaintiff-Appellant seeks a brief administrative injunction to maintain the *status quo* and allow the Court to consider, on an expedited basis, whether to grant an injunction pending appeal. The Defendant-Appellees' take no position on the request for an administrative injunction.

In this appeal, the Court will consider novel and important constitutional issues of first impression concerning separation of powers, presidential records, and executive privilege. The administrative injunction would prevent the production of the records at issue while the Court considers the forthcoming Motion for Injunction Pending Appeal. If no administrative injunction issues from this Court, then the records at issue will be produced on November 12, at 6:00 p.m. Put simply, this motion seeks only a brief pause in the production; it will not prejudice the other arguments or requests to be made by the parties in this important appeal.

The parties agree that this motion and the forthcoming Motion for an Injunction Pending Appeal should be handled expeditiously. Consequently, the parties request that the Court consider this motion

promptly and enter the following briefing schedule for the Motion for an Injunction Pending Appeal:

1. Appellant's Motion for an Injunction Pending Appeal will be filed by November 12, 2021.

2. Appellees' response briefs will be filed within three days of the filing of Appellant's motion.

3. Appellant's reply brief will be filed the day after Appellees' response briefs are filed.

4. The parties respectfully request that the Court consider the motion as expeditiously as the Court deems practicable.

## BACKGROUND

On Friday, November 12, 2021, at 6:00 p.m., the Archivist of the United States intends to produce records pursuant to a sweeping records request from the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"). The production will include the release of President Trump's privileged and confidential documents.

The records requests at issue are exceedingly broad and untethered from any legitimate legislative purpose. President Trump has exercised

his constitutional and statutory right to assert executive privilege over a subset of those documents, and he has made a protective assertion of privilege over any future materials requested. Subsequently, President Biden refused to assert privilege over the documents and sought to allow Congress to invade the executive privilege of President Trump. This unprecedented dispute between an incumbent and former President resulted in this litigation.

President Trump sought and was denied an injunction in the district court. DCD Nos. 5, 35, and 36. He immediately filed his Notice of Appeal, DCD No. 37 and moved the district court for an injunction pending appeal or an administrative stay, DCD No. 38. That relief was also denied. DCD No. 43, attached as Addendum B.

President Trump now moves this Court for an administrative injunction and expedited briefing schedule. Absent immediate relief, President Trump risks imminently losing his opportunity to obtain any meaningful remedy and the case could be mooted.

## STANDARD OF REVIEW

An administrative injunction is appropriate pursuant to the All Writs Act, 28 U.S.C. § 1651, to maintain the *status quo* on a temporary

basis while a court considers the matter. *S.E.C. v. Vison Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996). This Court reviews a district court's weighing of the four preliminary injunction factors for abuse of discretion. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The district court's legal conclusions are reviewed *de novo. Id.*

## ARGUMENT

This administrative injunction is warranted because of the following four factors: (i) President Trump will likely prevail on the merits; (ii) President Trump will suffer irreparable injury if relief is withheld; (iii) the other parties will not be harmed if relief is granted; and (iv) an injunction is in the public interest.

### *Likelihood of Success on the Merits*

President Trump is likely to prevail on the merits. In *Trump v. Mazars USA, LLP*, the Supreme Court fashioned four factors for courts to consider when determining whether congress is acting within the scope of its Article I authority when requesting executive branch records. 140 S. Ct. 2019 (2020). All factors favor granting the relief requested here.

The first factor is "whether the asserted legislative purpose warrants the significant step of involving the President and his papers." *Id.* at 2035 (internal quotations omitted). The alleged legislative purpose underpinning the overbroad request at issue here clearly does not merit involving the President and his records. The Committee has failed to identify anything in the broad swath of requested materials that would inform proposed legislation. If Congress wishes to legislate regarding its own security measures, it may certainly do so, but the President's private communications with and among staff members are irrelevant to that legislation. Further, the Committee does not adequately explain why other sources of information—outside of the requested records—could not "reasonably provide Congress the information it needs in light of its particular legislative objective." *Id.* at 2035-36.

The second *Mazars* factor requires courts to "insist on a subpoena no broader than reasonably necessary to support Congress's legislative objective," because "[t]he specificity of the subpoena's request 'serves as an important safeguard against unnecessary intrusion into the operation of the Office of the President.'" *Id.* at 2036 (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 387 (2004)). Despite this mandate, the district court

erroneously held that the request was not overly broad simply because President Biden had waived privilege. But President Biden cannot waive a constitutional limitation on Congressional authority. The request is far too broad, as even the district court acknowledged at oral argument in this case. *See* Pl. Mot. Prelim. Inj. Hr'g Tr., DCD No. 41, at 39, Nov. 4, 2021.

Third, "courts should be attentive to the nature of the evidence offered by Congress to establish that a [request] advances a valid legislative purpose." *Mazars*, 140 S. Ct. at 2036. "[U]nless Congress adequately identifies its aims and explains why the President's information will advance its consideration of possible legislation," "it is impossible to conclude that a [request] is designed to advance a valid legislative purpose." *Id*. The Committee has provided almost no evidence to establish that its request advances a legitimate legislative purpose.

Fourth, courts should assess the burdens imposed by the request because the records stem from a rival political branch with incentives to use the records requests for "institutional advantage." *Id*. As discussed in President Trump's briefing below, the number of records encompassed by the Committee's overbroad request is staggering. There can be no

doubt that the district court's ruling will result in a congressional institutional advantage to the detriment of the executive branch. For example, the district court's ruling effectively strips any former president of their constitutional and statutory rights to seek judicial review and would allow congress to conduct limitless partisan investigations into a former president and his administration mere months after leaving office.

President Trump is also likely to succeed in his appeal because the district court incorrectly held that President Biden had unfettered discretion to allow Congress to invade President Trump's executive privilege. Novel questions of congressional access to presidential records and executive privilege are at the heart of this case. These are serious issues, which the Supreme Court referred to as "fundamental to the 'operation of Government.'" *Mazars*, 140 S. Ct. at 2032 (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)). The disagreement between an incumbent President and his predecessor from a rival political party highlights the importance of executive privilege and the ability of Presidents and their advisers to reliably make and receive full and frank

advice, without concern that communications will be publicly released to meet a political objective.

This political clash also implicates the Supreme Court's recognition of every President's right to assert executive privilege. *See Nixon v. GSA*, 433 U.S. 425, 449 (1977). It is why the Presidential Records Act allows Presidents to seek a remedy in court. 44 U.S.C. § 2208(c)(2)(C) (stating the Archivist discloses records after incumbent denial of the privilege only if no court order is issued). Thus, the incumbent President's determination is not final, contrary to the district court's holding.

### *President Trump Will Suffer Irreparable Harm Absent Relief*

The deadline for the release of President Trump's documents is fast approaching, and if the documents are released, "the very right sought to be protected has been destroyed." *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1065 (D.C. Cir. 1998) (quoting *In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997)); s*ee also Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) ("Once the documents are surrendered," in other words, "confidentiality will be lost for all time. The *status quo* could never be restored.").

Absent judicial intervention, President Trump will suffer irreparable harm through the effective denial of a constitutional and statutory right to be fully heard on a serious disagreement between the former and incumbent President. President Trump is one of only five living Americans who, as former Presidents, are entrusted with protecting the records and communications created during their term of office. *GSA*, the Presidential Records Act, its associated regulations, and Executive Order 13489 are clear: a former President is not merely a "private party." Instead, he has the right to be heard and to seek judicial intervention should a disagreement between the incumbent and former Presidents arise regarding congressional requests and executive privilege.

The disclosure of the documents themselves is clear irreparable harm. If the Court does not intervene, the Archivist could give the Committee confidential, privileged information. Once disclosed, the information loses its confidential and privileged nature. *See Council on American-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 76 (D.D.C. 2009). If such material is disclosed before President Trump has had a proper opportunity for appellate review, "the very right sought to be

protected has been destroyed." *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1065 (D.C. Cir. 1998) (quoting *In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997)); s*ee also Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) ("Once the documents are surrendered," in other words, "confidentiality will be lost for all time. The *status quo* could never be restored."); *PepsiCo, Inc. v. Redmond*, 1996 WL 3965, at *30 (N.D. Ill. 1996) ("[J]ust as it is impossible to unring a bell, once disclosed, . . . confidential information lose[s] [its] secrecy forever"); *Metro. Life Ins. Co. v. Usery*, 426 F. Supp. 150, 172 (D.D.C. 1976) ("Once disclosed, such information would lose its confidentiality forever.").

### *The Appellees Will Suffer No Harm If A Stay Is Granted*

Unlike the irreparable harm President Trump will suffer absent interim relief, Appellees will suffer no harm by delaying production while the parties litigate the request's validity. The documents are safe in the possession of the Archivist, and a stay only "postpones the moment of disclosure . . . by whatever period of time may be required" to finally adjudicate the merits of President Trump's claims. *Providence Journal*, 595 F.2d at 890; see *Fund for Animals v. Norton*, 281 F. Supp. 2d 209, 222 (D.D.C. 2003) (rejecting government's claim of harm in having its

action "delayed for a short period of time pending resolution of this case on the merits").

### *A Stay Is in the Public Interest*

Finally, the public interest weighs strongly in favor of granting this motion, on which Appellees take no position. The D.C. Circuit "has clearly articulated that the public has an interest in the government maintaining procedures that comply with constitutional requirements." *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. FEMA*, 463 F. Supp. 2d 26, 36 (D.D.C. 2006) (citing *O'Donnell Const. Co. v. Dist. of Columbia*, 963 F.2d 420, 429 (D.C. Cir. 1992)). This case presents weighty and rarely litigated constitutional issues that could have a profound effect on the executive branch. An injunction, so that the Court can judiciously consider this dispute, is in the public's and this Republic's best interest.

## PRAYER FOR RELIEF & CONCLUSION

Therefore, President Trump respectfully moves this Court to enter an administrative injunction enjoining release of the privileged documents while the Court considers President Trump's Motion for a Stay Pending Appeal. The Appellants take no position.

President Trump also requests that the Court enter the following briefing schedule: The motion for an injunction pending appeal will be due no later than **Friday, November 12**; the Appellees' response will be due three days after the opening brief; and Appellant's reply will be due the day after the Appellees' briefs are filed.

The parties jointly request this Court act as expeditiously as possible in consideration of this motion.

Dated: November 11, 2021　　　Respectfully submitted,

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com

*Attorney for Donald J. Trump*

# CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the parts of the Petition exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), it contains 2,102 words.

Undersigned counsel certifies that this Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this Petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook.

Dated: November 11, 2021          Respectfully submitted,

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Attorney for Donald J. Trump*

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

Dated: November 11, 2021

Respectfully submitted,

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com